24-2437
*Lingley v. Seeking Alpha Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of August, two thousand twenty-six.

PRESENT:
> PIERRE N. LEVAL,
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

MATTHEW LINGLEY and SANDY PAPADOPOULOS, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.                                                                                  No. 24-2437

SEEKING ALPHA INC.,

*Defendant-Appellee.*[*]

_____

| | |
|---|---|
| **For Plaintiffs-Appellants:** | EDWARD A. BEDARD, Robbins Alloy Belinfante Littlefield, LLC, Atlanta, GA. |
| **For Defendant-Appellee:** | JACOB D. ALBERTSON (Eleanor M. Lackman, *on the brief*), Mitchell Silberberg & Knupp LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 15, 2024 judgment of the district court is **AFFIRMED**.

Matthew Lingley and Sandy Papadopoulos (together, "Plaintiffs") appeal from a judgment of the district court dismissing their individual and putative-class claims under state law for the recission of alleged investment-advisory contracts entered into with Seeking Alpha Inc. ("Seeking Alpha") and for restitution. On appeal, they contend that the district court "misread and misapplied the plain text of the [Investment Advisers Act of 1940, 'IAA'] and binding authority from the Supreme Court" in dismissing their complaint as barred by the "publishers[']

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

exemption" of the IAA. Lingley Br. at 2–3. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

We review a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Bangs v. Smith*, 84 F.4th 87, 95 (2d Cir. 2023). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Bangs*, 84 F.4th at 95 (internal quotation marks omitted). Finally, "[w]e are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995).

I.     **Background.**

The complaint alleges that Seeking Alpha provided Plaintiffs with investment advice without first registering as an investment adviser, "either with the SEC or with the states in which [Seeking Alpha] has clients." J. App'x at 23. In particular, Plaintiffs assert that they are purchasers of "Seeking Alpha Premium," a paid subscription service offered by Seeking Alpha that allows

3

subscribers to access content on its website. The website includes proprietary "Quant Ratings" that grade stocks based on five factors – valuation, growth, profitability, momentum, and revisions – before characterizing the stock as either a "strong sell," "strong buy," or "hold." *See id.* at 13–14. According to the complaint, Seeking Alpha reviews its stock ratings daily and changes them as market conditions dictate. Among other features, Seeking Alpha's website allows subscribers to link their brokerage accounts to their Seeking Alpha profile so that they will receive "on-site warnings" if certain stocks in their portfolio are underperforming. *Id.* at 16.

Plaintiffs allege that the website's "Terms of Use" constituted an investment-advisory contract, which they seek to rescind in light of Seeking Alpha's failure to register as an investment adviser. In particular, they seek the return of all fees paid to Seeking Alpha for the subscription service. The named Plaintiffs, residents of New York and Georgia, respectively, bring their claims "exclusively under state law" via "either the common law or an implied private right of action in every state that does not have an express statutory right of action." *Id.* at 24.

4

Noting the parties' "agree[ment]" that "state [securities] law is to be interpreted in accordance with the [federal] IAA," the district court opined that the "legal feasibility of Plaintiffs' claim" "therefore depends on whether, under state law as interpreted in harmony with the IAA, Seeking Alpha's conduct described in the Complaint would qualify Seeking Alpha as an investment adviser." *Id.* at 250. The court then concluded that Seeking Alpha fell under a federal statutory exception from registration as an investment adviser reserved for publishers of "bona fide newspaper[s], news magazine[s,] or business or financial publication[s] of general and regular circulation." 15 U.S.C. § 80b-2(a)(11); *see also Lowe v. SEC*, 472 U.S. 181, 206, 211 (1985). The court ultimately dismissed Plaintiffs' complaint based on that conclusion.

On appeal, Plaintiffs contend that this conclusion was erroneous. But whether or not Seeking Alpha falls under the IAA's publishers' exemption, the district court never determined (1) which state's substantive law controls this dispute, and (2) whether the applicable state law even provides a private right of action for recission of such contracts. The Terms of Use contain a choice-of-law clause providing that New York law "governed" the "entire" relationship "between [Plaintiffs] and Seeking Alpha" "without regard to [New York's]

5

principles of conflict of laws." Seeking Alpha Br. at 50 (quoting J. App'x at 195). Seeking Alpha therefore contends that "[a]s a matter of law, [Plaintiffs] are limited to bringing their claim under New York's Martin Act," N.Y. Gen. Bus. Law, Art. 23-A, §§ 352–359. Seeking Alpha Br. at 50. And because "no private right of action for recission exists" under that Act, Seeking Alpha maintains that Plaintiffs' claim is foreclosed. *Id.*

Rather than address this argument, the district court presumed that state law "is to be interpreted in accordance with the [federal] IAA" and then dismissed Plaintiffs' claims solely on the basis of precedents interpreting the federal IAA's publishers' exception. J. App'x at 250; *see id.* at 251–63.[1] Though we agree that Plaintiffs' complaint should be dismissed, we do so on alternative grounds and thus do not address the district court's rationale. *See Headley*, 53 F.3d at 476.

## II. Discussion.

"As a federal court sitting in diversity jurisdiction, the [d]istrict [c]ourt [wa]s obligated to apply the law of the forum state in analyzing preliminary choice-of-law questions." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365

---

[1] The IAA provides that "[n]o law of any State . . . requiring the registration, licensing, or qualification as an investment adviser . . . shall apply to any person . . . that is not registered under section 80b-3 . . . because that person is excepted from the definition of an investment adviser under section 80b-2(a)(11)," the publishers' exception. 15 U.S.C. § 80b-3a(b)(1)(B).

(2d Cir. 2003) (alteration adopted and internal quotation marks omitted). Here, the relevant forum state is New York. And under New York law, "great deference is to be given a contract's designation of the law that is to govern disputes arising from the contract, and that designation is determinative if the state selected has sufficient contacts with the transaction." *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984) (citation omitted); *see also Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015) (emphasizing that New York courts "generally enforce choice-of-law clauses"). Indeed, "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *see also* Restatement (Second) of Conflict of Laws § 187(2) (1971).

Here, the Terms of Use stipulate that the "entire agreement between [Plaintiffs] and Seeking Alpha" was to be "governed by and construed in accordance with" New York law. J. App'x at 94. And there can be no doubt that New York has "sufficient contacts with the transaction," since Seeking Alpha is "an Israeli corporation with an office in New York City," *id.* at 245, that "is

7

registered to do business" in New York, *id.* at 165. Nor can it be said that another state possessed materially greater interests in the parties' dispute than New York. While one of the named Plaintiffs hails from Georgia, that is hardly a basis for concluding that "'the most significant contacts' with the matter in dispute are in another state," *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (quoting *Haag v. Barnes*, 9 N.Y.2d 554, 559 (1961)), such that the choice-of-law clause would be unenforceable on public-policy grounds. New York courts have long held that a "basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent," making the public-policy exception reserved for "truly obnoxious" applications of a chosen forum's law. *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629 (2006) (internal quotation marks omitted). That is simply not the case here.

Because New York law applies, we consider next whether Plaintiffs have a private cause of action to bring their rescission claim under New York law. They do not. Under New York's Martin Act, qualifying "person[s]" and entities must register as "investment advisers." N.Y. Gen. Bus. Law §§ 359-eee(1)(a), (2)(a). But as Plaintiffs concede, the Martin Act contains no "express statutory cause of action," J. App'x at 24, and instead grants the New York Attorney General

8

"exclusive enforcement powers," *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001) (internal quotation marks omitted), for statutory violations; *see also* 12 Joseph C. Long, *Blue Sky Law* § 4:51 (Nov. 2025 update) ("[T]he Martin Act was, and still is, enforced only by civil enforcement actions by the New York Attorney General or by criminal prosecution."). Indeed, citing the New York Court of Appeals, we have expressly recognized that "there is no implied private right of action under the Martin Act." *Castellano*, 257 F.3d at 190 (citing *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 275 (1987)); *see also Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 351 (2011) (highlighting that the "Martin Act did not create a private right of action to enforce its provisions," and that "no new *per se* action was contemplated by the Legislature" (italicization added and internal quotation marks omitted)).

Plaintiffs cannot salvage their rescission claim by relying on the common law to avoid the Act's strictures. New York law plainly forecloses such a common-law claim. *People by Schneiderman v. Credit Suisse Sec. (USA) LLC*, 31 N.Y.3d 622, 632 (2018) ("[A] private litigant may not pursue a common-law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations *and would not exist but for the statute*." (internal

9

quotation marks omitted)); *see also Assured Guar. (UK) Ltd.*, 18 N.Y.3d at 351. Under New York law, then, any hypothetical cause of action must be brought pursuant to the Martin Act.   And because that statute contains no such private right of action, the complaint must be dismissed.   *See Headley*, 53 F.3d at 476; *Castellano*, 257 F.3d at 191.

*     *     *

We have considered Plaintiffs' remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court